**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| In re | Jointly Administered Under<br>Case No. 08-45257 |
| Petters Company, Inc., et al., | |
| | Court File No. 08-45257 |
| Debtors. | |

| (includes: | Court File Nos.: |
|---|---|
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |

Chapter 11 Cases
Judge Gregory F. Kishel

---

Douglas A. Kelley, in his capacity as the court-
appointed Chapter 11 Trustee of Debtor Petters
Company, Inc.,

       Plaintiff,

v.                                ADV. NO. 10-04427

Lancer Financial Services, LLC; Lancer Partners Ltd.;
Lancer Partners GP, LLC; Chad Clifford; Fargo
Petroleum, LLC (f/k/a Davison Petroleum Products,
LLC); EFO Holdings, L.P.; Cypress Financial Trading
Co.; Falcon Partners, Ltd.; Harbor Value Fund; Haven
Retirement Fund, LP; Jay B. Jensen; McCord
Christensen Holdings, LLC; McCord Christensen;
Susan Cowden Raybourn; J. Richard Rock; Michael
Smith; the D. Truitt and Lorna Davis Charitable Trust;
Lamar D. Matthews, as Trustee of the D. Truitt and
Lorna Davis Charitable Trust; the D. Truitt and Lorna
Davis Foundation; and Jack W. Young,

       Defendants.

---

**NOTICE OF HEARING AND MOTION TO DISMISS OF DEFENDANTS LANCER FINANCIAL SERVICES, LLC; LANCER PARTNERS LTD.; LANCER PARTNERS GP, LLC; FARGO PETROLEUM, LLC (f/k/a DAVISON PETROLEUM PRODUCTS, LLC); FALCON PARTNERS, LTD.; HAVEN RETIREMENT FUND, LP; JAY B. JENSEN; D. TRUITT AND LORNA DAVIS CHARITABLE TRUST; LAMAR D. MATHEWS, AS TRUSTEE OF THE D. TRUITT AND LORNA DAVIS CHARITABLE TRUST; D. TRUITT AND LORNA DAVIS FOUNDATION; AND JACK W. YOUNG**

---

To:     Plaintiff Douglas A. Kelly, Chapter 11 Trustee, and his attorney James A. Lodoen, Terrence J. Fleming, Kirstin D. Kanski of Lindquist & Vennum P.L.L.P., 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402-2274

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6), Defendants Lancer Financial Services, LLC; Lancer Partners Ltd.; Lancer Partners GP, LLC; Fargo Petroleum, LLC (f/k/a Davison Petroleum Products, LLC); Falcon Partners, Ltd.; Haven Retirement Fund, LP; Jay B. Jensen; the D. Truitt and Lorna Davis Charitable Trust; Lamar D. Mathews, as Trustee of the D. Truitt and Lorna Davis Charitable Trust; the D. Truitt and Lorna Davis Foundation; and Jack W. Young (collectively, "Defendants") hereby move the Court to dismiss the Amended Complaint filed by Plaintiff Douglas A. Kelly, Chapter 11 Trustee, in its entirety and with prejudice, on each of the following grounds:

1.      Some of the fraudulent transfer claims (Counts II–V) are time-barred by Minnesota's six-year statute of limitations in Minn. Stat. § 541.05, subd. 1(2).

2.      All of the fraudulent transfer claims (Counts II-V) also fail to state a claim on substantive grounds because:

        a.      The Trustee lacks standing to assert state law fraud claims under the Bankruptcy Code § 544(b) by failing to identify a golden creditor;

b.     The actual fraudulent transfer claim (Count II) fails because (i) satisfaction of obligations under Defendants' valid loans is not fraudulent as a matter of law; and (ii) actual fraudulent transfer is not pled with particularity as required by Fed. R. Civ. P. 9(b).

c.     The constructive fraudulent transfer claims (Counts III-V) fail because receipt of reasonably equivalent value is established on the face of the Complaint and the Trustee failed to plead constructive fraud with particularity as required by Fed. R. Civ. P. 9(b).

d.     The Amended Complaint fails on its face to rebut Defendants' good faith defense.

3.     All other claims (Counts I, VI, and VII) fail to state a claim because:

a.     Count I for turnover and accounting fails because title to the property at issue is in dispute;

b.     Count VI for unjust enrichment or equitable disgorgement fails because (i) the Trustee does not have authority to pursue this state law claim; (ii) the Trustee failed to allege unlawful or illegal conduct on the part of Defendants; (iii) the Trustee has an adequate remedy at law; and (iv) most of claims are barred by the statute of limitations; and

c.     Count VII for disallowance fails because Defendants have not asserted a claim against Debtors.

The Motion is based upon all the files, records, and proceedings in this action, as well as the Defendants' accompanying Memorandum of Law in Support of Motion to Dismiss (submitted herewith) and Defendants' reply brief and the oral arguments of its counsel.

PLEASE TAKE FURTHER NOTICE THAT the Court will hold a hearing on this Motion at a date and time to be set by the Court in accordance with its January 21, 2011 Order Authorizing and Approving Case Management Procedures Governing Multiple Adversary Proceedings.

PLEASE TAKE FURTHER NOTICE THAT any response to this Motion must be filed and served by a date and time to be set by this Court in accordance with its January 21, 2011 Order Authorizing and Approving Case Management Procedures Governing Multiple Adversary Proceedings. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

Dated: March 10, 2011

FAEGRE & BENSON LLP

/e/ Stephen M. Mertz
Stephen M. Mertz (#212131)
Jerome A. Miranowski (#125593)
S. Renee Dotson (#0387418)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

**ATTORNEYS FOR LANCER FINANCIAL SERVICES, LLC; LANCER PARTNERS LTD.; LANCER PARTNERS GP, LLC; FARGO PETROLEUM, LLC (f/k/a DAVISON PETROLEUM PRODUCTS, LLC); FALCON PARTNERS, LTD.; HAVEN RETIREMENT FUND, LP; JAY B. JENSEN; THE D. TRUITT AND LORNA DAVIS CHARITABLE TRUST; LAMAR D. MATHEWS, AS TRUSTEE OF THE D. TRUITT AND LORNA DAVIS CHARITABLE TRUST; THE D. TRUITT AND LORNA DAVIS FOUNDATION; AND JACK W. YOUNG**

fb.us.6494549.02

| | |
|---|---|
| In re | Jointly Administered Under<br>Case No. 08-45257 |
| Petters Company, Inc., et al., | |
| Debtors. | Court File No. 08-45257 |
| (includes: | Court File Nos.: |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | Chapter 11 Cases<br>Judge Gregory F. Kishel |

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the court-appointed Chapter 11 Trustee of Debtor Petters Company, Inc., | |
| Plaintiff, | |
| v. | ADV. NO. 10-04427 |
| Lancer Financial Services, LLC; Lancer Partners Ltd.; Lancer Partners GP, LLC; Chad Clifford; Fargo Petroleum, LLC (f/k/a Davison Petroleum Products, LLC); EFO Holdings, L.P.; Cypress Financial Trading Co.; Falcon Partners, Ltd.; Harbor Value Fund; Haven Retirement Fund, LP; Jay B. Jensen; McCord Christensen Holdings, LLC; McCord Christensen; Susan Cowden Raybourn; J. Richard Rock; Michael Smith; the D. Truitt and Lorna Davis Charitable Trust; Lamar D. Matthews, as Trustee of the D. Truitt and Lorna Davis Charitable Trust; the D. Truitt and Lorna Davis Foundation; and Jack W. Young, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT AGAINST DEFENDANTS LANCER FINANCIAL SERVICES, LLC; LANCER PARTNERS LTD.; LANCER PARTNERS GP, LLC; FARGO PETROLEUM, LLC (f/k/a DAVISON PETROLEUM PRODUCTS, LLC); FALCON PARTNERS, LTD.; HAVEN RETIREMENT FUND, LP; JAY B. JENSEN; D. TRUITT AND LORNA DAVIS CHARITABLE TRUST; LAMAR D. MATHEWS, AS TRUSTEE OF THE D. TRUITT AND LORNA DAVIS CHARITABLE TRUST; D. TRUITT AND LORNA DAVIS FOUNDATION; AND JACK W. YOUNG**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................1

ARGUMENT ..........................................................................................................3

I.     THE STATUTE OF LIMITATIONS BARS THE TRUSTEE'S ABILITY
TO SUE TO RECOVER SOME OF THE TRANSFERS. ...................................5

     A.     The Statute of Limitations Period is Six Years with No Discovery
Period. ....................................................................................................7

     B.     Fraudulent Concealment Does Not Toll the Limitations Period ...............10

          1.     The Trustee fails to plead concealment by the Defendants as
required by Minnesota law. .......................................................11

          2.     The Trustee fails to plead fraudulent concealment with the
particularity as required by Fed. R. Civ. P. 9(b) ..........................13

     C.     The Limitations Period is Not Tolled by 11 U.S.C. § 546(a). ..................15

     D.     The Trustee's Limitations Argument Leads to Unreasonable
Results ....................................................................................................19

     E.     Any Claims Based on Transfers Occurring Before October 9, 2004
are Time Barred and Must be Dismissed. .................................................21

II.     NONE OF THE FRAUDULENT TRANSFERS CLAIMS (COUNTS II –
V) STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...............23

     A.     The Trustee Lacks Standing to Assert State Law Fraud Claims
(Counts II - V) Because He Failed to Identify a Golden Creditor. ...........23

     B.     The Trustee's Actual Fraud Claim (Count I) Fails Under MUFTA ..........24

          1.     Satisfaction of obligations under valid loans is not fraudulent as a
matter of law. .............................................................................25

          2.     The Trustee fails to plead actual fraudulent transfer with
particularity as required by Fed. R. Civ. P. 9(b) ..........................30

     C.     The Trustee's Constructive Fraud Claims (Counts III - V) Fail
Because the Debtor Received Reasonably Equivalent Value. ...................33

i

D. The Complaint Fails on Its Face to Rebut Defendants' Good Faith Defense. ..............................................................................................34

1. *Sharp* establishes the appropriate good faith standard for loan repayments. ................................................................................36

2. Defendants' good faith defense is established on the face of the Amended Complaint. ..................................................................38

E. The Trustee Failed to Plead Any Transfers Against Certain Defendants. ..............................................................................................39

III. NONE OF THE REMAINING CLAIMS (COUNTS I, VI, AND VII) STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THEY ARE PREMATURE AND FATALLY FLAWED. ...............39

A. The Trustee's Turnover and Accounting Claim (Count I) Fails Because the Transfers Are Not Property of the Estate. ............................39

B. The Trustee's Unjust Enrichment/Equitable Disgorgement Claim (Count VI) Fails. ..................................................................................41

C. The Trustee's Disallowance Claim (Count VII) Fails Because it is Premature. ..............................................................................................45

IV. RESERVATION OF RIGHTS TO JURY TRIAL. ............................................46

CONCLUSION...............................................................................................................46

## INTRODUCTION

Defendants Lancer Financial Services, LLC ("Lancer"); Lancer Partners Ltd. ("LPL");

Lancer Partners GP, LLC ("LPGP"); Fargo Petroleum, LLC (f/k/a Davison Petroleum

Products, LLC) ("Davison"); Falcon Partners, Ltd. ("Falcon"); Haven Retirement Fund, LP

("Haven"); Jay B. Jensen ("Jensen"); the D. Truitt and Lorna Davis Charitable Trust (the

"Trust"); Lamar D. Mathews, as Trustee of the D. Truitt and Lorna Davis Charitable Trust

("Mathews"); the D. Truitt and Lorna Davis Foundation (the "Foundation"); and Jack W.

Young ("Young") (collectively, "Defendants") respectfully submit this Memorandum in

Support of their Motion to Dismiss.

## BACKGROUND

On October 9, 2010, Douglas A. Kelley, in his capacity as trustee (the "Trustee") for

Petters Company, Inc. ("PCI") and Petters Group Worldwide, LLC ("PGW"), filed the

Complaint in this adversary proceeding. ("Compl." (Dkt. No. 1).) On February 1, 2011, the

Trustee filed an Amended Complaint adding Mathews and the Foundation as defendants. ("Am.

Compl." (Dkt. No. 34).) The Trustee's allegations against Defendants in the Amended

Complaint are nearly identical to the allegations Trustee has asserted against many other

defendants he has sued for recovery of alleged fraudulent conveyances in connection with the

PCI and PGW bankruptcy cases.[1]

The claims the Trustee asserts arise from an alleged fraud and Ponzi scheme designed

and orchestrated by Thomas J. Petters ("Petters") and business organizations directly and

---

[1] When considering a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks and citation omitted). This Court can certainly consider the similar complaints filed against other defendants in ruling on this motion to dismiss.

indirectly controlled by him. (Am. Compl. ¶ 37.)[2] The Trustee alleges that Petters was indicted, found guilty, and sentenced to 50 years in prison for his crimes. (*Id.* ¶¶ 39-40.) According to the Amended Complaint, the Trustee alleged that numerous individuals collectively identified as "Associates" assisted Petters in the operation of his scheme. (*Id.* ¶ 40.) The Trustee alleges that each of the Associates has pled guilty to crimes related to Petters' scheme. (*Id.*)

The Trustee alleges that Petters and his Associates induced investors to finance the purchase of non-existent electronic equipment secured by fabricated purchase orders. (*Id.* ¶ 42.) The Trustee alleges that Petters repaid investors with funds obtained from subsequent investors. (*Id.* ¶ 42.) The Trustee also alleges that Petters and his Associates intentionally concealed the fraud in an effort to prevent authorities, investors and creditors from discovering it. (*Id.* ¶¶ 55-56.) The Amended Complaint asserts the following causes of action:

Count I:       Turnover and Accounting - 11 U.S.C. § 542 (¶¶ 74-77)

Count II:      Fraudulent Transfers – Actual Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.44(a)(1) and 513.47 or Other Governing Fraudulent Transfer Laws (*Id.* ¶¶ 78-83)

Count III:     Fraudulent Transfers - Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.44(a)(2)(i) and 513.47 or Other Governing Fraudulent Transfer Laws (*Id.* ¶¶ 84-89)

Count IV:      Fraudulent Transfers - Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47 or Other Governing Fraudulent Transfer Laws (*Id.* ¶¶ 90-95)

Count V:       Fraudulent Transfers - Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.45(a) and 513.47 or Other Governing Fraudulent Transfer Laws (*Id.* ¶¶ 96-101)

Count VI:      Unjust Enrichment/Equitable Disgorgement (*Id.* ¶¶ 102-107)

---

[2] Defendants dispute many of the allegations in the Trustee's Amended Complaint. But, for the purpose of this motion only, Defendants shall, as they must, assume that the factual allegations, but not legal conclusions, contained in the Amended Complaint are true.

Count VII:     Disallowance - 11 U.S.C. § 502(b) and (d) (*Id.* ¶¶ 108-111)

The Trustee seeks to recover the principal and interest paid to certain Defendants on promissory notes. In Exhibit A to the Amended Complaint, the Trustee alleges that the transfers he is seeking to recover occurred between May 8, 2001, through February 3, 2006. The Amended Complaint extensively discusses the alleged fraud perpetrated by Petters and his Associates, but, notably, it does not assert that Defendants committed any affirmative fraudulent acts.

Defendants make this motion to dismiss each of the above claims in accordance with the case management order issued by the Honorable Gregory F. Kishel in the underlying bankruptcy proceeding titled *In re Petters Company, Inc., et al.*, Court File No. 08-45257. (*See Order Authorizing and Approving Case Management Procedures Governing Multiple Adversary Proceedings Arising under 11 U.S.C. §§ 105, 502, 506, 510, 542, 544, 547, 548 and 550*, dated Jan. 21, 2011 (Dkt. No. 961).) As detailed below, the Court should dismiss each of the Trustee's claims for numerous reasons, including but not limited to, the Trustee failed to satisfy the pleading requirements of Fed. R. Civ. P. 12(b) and 9(b), the applicable statute of limitations bars recovery of some of the alleged transfers, the Trustee lacks standing to assert some of the claims, and some of the claims are premature. Accordingly, the Court should dismiss the claims asserted in the Amended Complaint against Defendants.

## ARGUMENT

Under Fed. R. Civ. P. 12(b)(6), applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7012, a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, a complaint must allege facts with enough

3

specificity "to raise a right to relief above the speculative level." *Id.* at 555. A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of any 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557).

In evaluating a motion to dismiss, the court accepts a complaint's factual allegations as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1950 (quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a plausible claim for relief and survive a motion to dismiss. *Id.* at 1949-50; *McAdams v. McCord*, 584 F.3d 1111, 1113-15 (8th Cir. 2009) (dismissing complaint because lack of specific factual allegations defeated plausibility of plaintiffs' claim); *see also Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 353-54 (Bankr. S.D.N.Y. 2010) (dismissing constructive fraudulent transfer claims on a Rule 12(b)(6) motion because plaintiff failed to plead sufficient facts to support the claims); *Angell v. Burrell (In re Caremerica, Inc.)*, 409 B.R. 759, 767 (Bankr. E.D.N.C. 2009) (actual and constructive fraudulent transfer claims dismissed under Rule 12(b)(6)).

In addition to meeting the standards set forth in *Twombly* and *Iqbal*, the Trustee's allegations must also meet the pleading requirements of Fed. R. Civ. P. 9(b), applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7009. Rule 9(b) applies to both actual and constructive fraudulent transfer claims. *OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 698 (Bankr. D. Del. 2005); *see Kranz v. Koenig*, 484 F. Supp. 2d 997, 1001-02 (D. Minn. 2007) (holding that actual and constructive fraudulent transfer

4

claims under Minnesota law must be pled with particularity). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In order to meet 9(b)'s heightened pleading requirement, a plaintiff must set forth the who, what, when, where, and how" of the claim. *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000) (internal quotation omitted).

The Court should dismiss the Amended Complaint as to Defendants because some of the claims are based on transfers that are time barred. The Court should also dismiss the fraudulent transfer claims in the Amended Complaint because the Trustee failed to identify a "golden creditor" with standing to assert state law fraud claims and failed to plead "the who, what, when, where, and how" of the fraud as required by Fed. R. Civ. P. 9(b). Additionally, satisfaction of obligations under Defendants' valid loans is not fraudulent as a matter of law. Moreover, Defendants received the challenged transfers in the Amended Complaint in satisfaction of valid, antecedent debts. Beyond that, the Amended Complaint fails to rebut Defendants' good faith defense. Finally, the Court should dismiss the Amended Complaint because the Trustee's claims for accounting and turnover, unjust enrichment, and disallowance are premature and fatally flawed as a matter of law.

## I.     THE STATUTE OF LIMITATIONS BARS THE TRUSTEE'S ABILITY TO SUE TO RECOVER SOME OF THE TRANSFERS.

All the fraudulent transfer claims in the Amended Complaint – Counts II-V – are brought under Minnesota's version of the Uniform Fraudulent Transfer Act, Minn. Stat. § 513.41-51 ("MUFTA"). MUFTA is a statute, and so the claims premised on MUFTA are based "upon a liability created by statute," and thus governed by the six-year limitations period of subd. 1(2) of

Minn. Stat. § 541.05 (hereafter "subd. 1(2)").[3]  The six-year clock of subd. 1(2) begins to run on the date the alleged statutory violation occurred.  *See A.P.I. Inc. v. Home Ins. Co.,* 706 F. Supp. 2d 926, 945 (D. Minn. 2010) ("[Minnesota] statutory fraud claims accrue at the time the alleged statutory violation occurred").[4]  For Minnesota fraudulent transfer claims, the six-year clock begins to run from the date of the challenged payments.  *See Mosier v. Cargill Fin. Servs. Corp. (In re Mansfield Corp.),* 339 B.R. 194, 199-200 (Bankr. D. Minn. 2006) (Kishel, J.) (in fraudulent transfer case, Minnesota's six-year limitations period measured from date of transfer); *see also Klehr v. A.O. Smith Corp.,* 875 F. Supp. 1342, 1352-53 (D. Minn. 1995), *aff'd* 87 F.3d 231 (8th Cir. 1996), *aff'd* 521 U.S. 179 (1997) (in statutory fraud case, Minnesota's six-year limitations period measured from date of sale allegedly based on fraud).

The Trustee filed his original Complaint on October 9, 2010.[5]  Thus, any transfers six years prior to this date are time barred.  Here, the Trustee identifies the dates of challenged transfers to Defendants in Exhibit A to the Amended Complaint.  Where the facts establishing application of the six-year time-bar are apparent on the face of the Amended Complaint, the Court must enforce the statute of limitations at the outset of the case, on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *See Guy v. Swift & Co.,* 612 F.2d 383, 385 (8th Cir. 1980) ("Where it appears from the face of the complaint itself that the limitations period has run, an action is properly subject to dismissal for failure to state a claim under Fed. R. Civ. P.

---

[3] Subd. 1(2) of Minn. Stat. § 541.05 provides as follows:  "Except where the Uniform Commercial Code otherwise prescribes, the following actions shall be commenced within six years:  . . . (2) upon a liability created by statute, other than those arising upon a penalty or forfeiture or where a shorter period is required by section 541.07 . . . ."

[4] Internal citations and quotation marks are omitted throughout this brief unless stated otherwise.

[5] The Trustee filed the Amended Complaint naming Mathews and the Foundation on February 1, 2011.

12(b)(6).”); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) (Rule 12(b)(6) dismissal on limitations grounds appropriate “if allegations in the complaint suffice to establish that ground”). In response to this straightforward analysis, the Trustee has suggested two arguments:  (1) that his MUFTA claims are “for relief on the ground of fraud”, and therefore subject to the discovery allowance period provided by Minn. Stat. § 541.05, subd. 1(6) (hereafter “subd. 1(6)”)[6]; and (2) that fraudulent concealment by Petters works to toll the limitations period as to Defendants.  As discussed below, these arguments are contrary to controlling precedent and lead to nonsensical results – effectively unlimited extension of the limitations period.

### A.    The Statute of Limitations Period is Six Years with No Discovery Period.

In 2004, the Eighth Circuit confirmed that subd. 1(2) of Minn. Stat. § 541.05, rather than subd. 1(6), which provides a discovery allowance period, governs Minnesota fraud claims based on a statute.  In *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004), plaintiff sued several smokeless tobacco companies and their trade association, alleging *inter alia* common law fraud and statutory fraud under the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68-70 (“MPCFA”), and the Minnesota False Statements in Advertising Act, Minn. Stat. § 325F.67 (“MFSAA”).[7]  For the *common law* fraud claims, the *Tuttle* Court looked to subd. 1(6) and applied a discovery rule analysis.  *Tuttle,* 377 F.3d at 921-22.  But for the *statutory* fraud claims such as MPCFA and MFSAA, the Eighth Circuit looked to subd. 1(2), a provision that the Court made clear “does not include a discovery allowance as does the statute of limitations

---

[6] Subd. 1(6) of Minn. Stat. § 541.05 provides as follows:   “Except where the Uniform Commercial Code otherwise prescribes, the following actions shall be commenced within six years: . . . (6) for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud . . . .”

[7] Though the text of the MFSAA does not contain the word fraud, it is a statutory claim where the “gravamen of the complaint is fraud” and therefore is a statutory fraud claim.  *See Russo v. NCS Pearson, Inc.,* 462 F. Supp. 2d 981, 1003 (D. Minn. 2006).

applicable to fraud claims." *Id.* at 926. The Eighth Circuit ruled that the statutory fraud claims were time-barred, as they were subject to a six-year limitations period commencing on the dates of sale, without a discovery allowance. *Id.*

Both before and after *Tuttle,* Minnesota federal district courts have regularly enforced this distinction between statutory and common law fraud claims, consistently rejecting a subd. 1(6) discovery allowance period for fraud claims based on statute. *See, e.g., Moua v. Jani-King of Minnesota, Inc.*, 613 F. Supp. 2d 1103, 1113-14 (D. Minn. 2009) (MSFAA claims based on fraudulent franchise sales are governed by subd. 1(2), not 1(6), and so the "statute of limitations . . . begins to run on the date of sale, not when the alleged fraudulent conduct is discovered"); *Buetow v. A.L.S. Enters.*, 259 F.R.D. 187, 192 (D. Minn. 2009) (MPCFA claim is not for common law fraud, and so is governed by subd. 1(2), which "'does not include a discovery allowance as does the statute of limitations applicable to [common law] fraud claims'") (bracketed language in original) (quoting *Klehr, supra,* 875 F. Supp. at 1352); *Veldhuizen v. A.O. Smith Corp.*, 839 F. Supp. 669, 676-77 (D. Minn. 1993) (MPCFA claim is "statutory fraud claim," not "governed by the same principles as [plaintiffs'] common law fraud claim", and thus subject to subd. 1(2), which "does not include a discovery provision").

While no court has directly addressed whether subd. 1(2) or 1(6) governs MUFTA claims, the above controlling precedent plainly answers the question. Like MPCFA and MSFAA claims, MUFTA claims include elements sounding in fraud. Also like MPCFA and MSFAA claims, MUFTA claims are premised "upon a liability created by statute" – the predicate for subd. 1(2). Applying the settled distinction between statutory and common law fraud claims established by the Eighth Circuit and Minnesota federal district courts, the strict six-year

limitations period of subd. 1(2) must govern MUFTA claims, just as it governs MPCFA and MSFAA claims.

Defendants recognize that several courts have referred in passing to subd. 1(6) as the applicable limitations provision for MUFTA. But in none of these cases was the choice between subd. 1(2) and 1(6) analyzed or apparently even raised by the parties. For example, this Court in *In re Quality Pontiac Buick* noted but never addressed the trustee's position that subd. 1(6) governed his MUFTA claim. *Berquist v. Vista Dev. (In re Quality Pontiac Buick, GMC Truck)*, 222 B.R. 865, 868-69 (Bankr. D. Minn. 1998). The court did not address the choice between subd. 1(2) and 1(6) because it was simply not at issue – the claims were time-barred by the two-year limitations provision in Bankruptcy Code § 546(a), and so the applicable state limitations provision never came into play. *Id.* at 869-70. The choice between subd. 1(2) and 1(6) was even less pertinent in *In re Curry*, 160 B.R. 813 (Bankr. D. Minn. 1993), where the question was irrelevant because the case did not involve a claim of fraudulent transfer. *See* 160 B.R. at 819 n.5. Finally, though *In re Grimlie*, 439 B.R. 710, 720 n.25 (B.A.P. 8th Cir. 2010), cites to *Curry*'s statement that subd. 1(6) applies to MUFTA, the choice between subd. 1(2) and 1(6) was never discussed and did not matter because suit had been filed less than six years after the alleged fraudulent transfer was made – the suit was therefore timely under either provision. *See id.* at 720.

Similarly, in *Palatine Nat'l Bank v. Strom (In re Strom)*, 97 B.R. 532 (Bankr. D. Minn. 1989), the court's statement regarding the statute of limitations was dicta.[8] In *In re Strom*, the bankruptcy court held that the (1) individual creditor did not have standing to pursue a fraudulent

---

[8] "An action to set aside a fraudulent conveyance is 'one for relief on the ground of fraud' and must be commenced within six years after 'discovery by the aggrieved party of the facts constituting the fraud.'" *In re Strom*, 97 B.R. at 539-40 (citing *Schmitt,* 93 N.W. 110 (1903)).

conveyance action, (2) and even if the creditor had standing, it failed to establish existence of any conveyance of property by its judgment debtor. 97 B.R. at 539-41. Because the court found the individual creditor lacked standing to bring the fraudulent conveyance action and that there was no conveyance subject to avoidance, it did not need to address the statute of limitations question, and thus its comments are dicta. Moreover, the court in *In re Strom* mistakenly relied upon *Schmitt v. Hager*, 93 N.W. 110 (Minn. 1903), a case that predates the enactment of a fraudulent conveyance statute in Minnesota. In fact, in 1903, when *Schmitt* was decided, there was not a distinction in Minnesota between common law fraud and statutory fraudulent conveyance, as Minnesota did not adopt the Minnesota Uniform Fraudulent Conveyance Act (the predecessor to MUFTA) until 1921. Thus, the only relief on the ground of fraud was common law fraud, so the distinction in Minn. Stat. § 541.05 and its predecessor, Minn. Gen. St. 1894 § 5136, between "fraud" and actions based "upon a liability created by statute" would be meaningless as it relates to statutory fraudulent conveyance actions. Finally, like the other cases, none of the parties in *In re Strom* raised the question of the applicability of subd. 1(2) or 1(6).

Thus, in none of these cases did the court have occasion to even examine whether subd. 1(2) or 1(6) applies to MUFTA. The choice between the two provisions is, therefore, appropriately determined by reference to *Tuttle* and the other binding precedent discussed above, precedent establishing that statutory fraud claims (of which MUFTA is one example) are properly governed by the strict six-year limitations period of subd. 1(2).

**B.      Fraudulent Concealment Does Not Toll the Limitations Period.**

Evidently recognizing the serious limitations problem he faces here, the Trustee seeks to avoid the time-bar by pleading fraudulent concealment. He thus claims at ¶ 58 of his Amended Complaint:

Any temporal limitations – statutory or otherwise – on the Trustee's ability to bring the causes of action set forth below are tolled by, among other things, ***Petters' breach of fiduciary duty*** in failing to disclose the fraud, ***the actions of Petters, or Petters and his Associates*** in fraudulently and intentionally concealing the fraud, and the adverse domination of PCI, PGW, and other affiliated entities ***by Petters, or Petters and his Associates***, until the appointment of the Receiver.

This effort to avoid the time bar has two fatal flaws. First, under settled Minnesota law, fraudulent concealment *by Petters et al.* cannot toll the statute of limitations *against Defendants* for a Minnesota state law claim such as the Trustee's claims under MUFTA. Second, even if concealment by Petters and his Associates were enough (which it plainly is not), the Trustee's allegations of fraudulent concealment fall well short of the particularity standard set by Fed. R. Civ. P. 9(b). The Court must reject the fraudulent concealment claims here now, as a matter of law.

> **1.    The Trustee fails to plead concealment by the Defendants as required by Minnesota law.**

The Trustee fails to plead concealment *by the Defendants* as required by Minnesota law.[9] The Minnesota Supreme Court first adopted the fraudulent concealment doctrine in *Schmucking v. Mayo*, 235 N.W. 633 (Minn. 1931). In *Schmucking*, this State's high court unambiguously specified that a claim of fraudulent concealment must be based on concealment by the "party against whom a cause of action exists," i.e., the defendant. 235 N.W. at 633. The *Schmucking*

---

[9] The fraudulent concealment issue raised here is solely a matter of Minnesota state law. In Counts II–V of the Amended Complaint, the Trustee seeks to step into the shoes of a state law creditor via § 544(b) of the Code, and enforce the state law creditor's rights under MUFTA. As a consequence, not only is the governing statute of limitations a matter of Minnesota state law, but so too are limitations-related concepts such as tolling for fraudulent concealment. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 464 (1975) (when state limitations period applies, "interrelated . . . provisions regarding tolling, revival, and questions of application" also apply); *Wilson v. Garcia*, 471 U.S. 261, 269 (1985) (state law governs "the length of the limitations period, and closely related questions of tolling and application"); *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). The federal tolling doctrine and that of other states are therefore inapplicable.

court identified two policy considerations underlying the fraudulent concealment doctrine, both of which make clear that the doctrine is premised upon concealment by the defendant:

> There is no reason, resting on general principles, why ***ignorance that is the result of defendant's actual fraud*** and not the stupidity or lack of diligence of plaintiff should not prevent the running of the statute in favor of the wrongdoer. Secondly, a person should not be permitted to ***shield himself*** behind the statute of limitations where ***his own fraud*** has placed him. He should not be permitted to profit by ***his own wrong***, and it would strike the moral sense strangely to permit him to do so.

235 N.W. at 634 (emphasis added). Following *Schmucking*, numerous courts applying Minnesota law have reiterated that the fraudulent concealment doctrine requires *concealment by the defendant*. *See, e.g., Buller v. A.O. Smith Harvestore Prod., Inc.*, 518 N.W.2d 537, 542 (Minn. 1994) (finding that the two justifications for fraudulent concealment are: (1) that "the plaintiff who does not assert his or her right ***because of the defendant's fraudulent concealment*** is not within the 'mischief' sought to be remedied by a statute of limitations"; and (2) that "***the defendant who fraudulently conceals a cause of action*** 'should not be permitted to shield himself behind the statute of limitations where his own fraud has placed him.'") (emphasis added) (quoting *Schmucking*, 235 N.W. at 634).[10]

---

[10] *See also Williamson v. Prasciunas*, 661 N.W.2d 645, 650 (Minn. Ct. App. 2003) ("[I]n cases of fraudulent concealment, the inquiry shifts to include not only an examination of the plaintiff's knowledge, but also an examination of ***the defendant's conduct*** . . . . A statute of limitations may be tolled if the cause of action is ***fraudulently concealed by the defendant***.") (emphasis added); *Haberle v. Buchwald*, 480 N.W.2d 351, 357 (Minn. Ct. App. 1992) ("A statute of limitations may be tolled if the cause of action is ***fraudulently concealed by the defendant***.") (emphasis added); *see also Goellner v. Butler*, 836 F.2d 426, 431 (8th Cir. 1988) ("Under Minnesota law, fraudulent concealment occurs when ***a party against whom a cause of action exists*** prevents another 'from obtaining knowledge thereof' . . . .") (emphasis added); *Helleloid v. Indep. Sch. Dist. No. 361*, 149 F. Supp. 2d 863, 869 (D. Minn. 2001) ("the essence of fraudulent concealment, then, is that ***the defendant has engaged in some behavior*** that has had the purpose and effect of concealing the presence of a cause of action from the plaintiff.") (quoting *Appletree Square 1 L.P. v. W.R. Grace & Co.*, 815 F. Supp. 1266, 1275 (D. Minn. 1993), *aff'd*, 29 F.3d 1283 (8th Cir. 1994).)

This straightforward principle of Minnesota law – that fraudulent concealment must be based on defendant's conduct – squarely precludes the Trustee's attempt here to avoid the six-year statute of limitations. In ¶ 58 of the Amended Complaint, the Trustee alleges that any limitations on his ability to bring the causes of actions are tolled by "*Petters and his Associates*, in fraudulently and intentionally concealing the fraud." (emphasis added) (*See also* Am. Compl. ¶¶ 55, 56.) Hence, the Trustee seeks to invoke the fraudulent concealment doctrine based on the alleged fraudulent concealment of Petters and his Associates and not based on any concealment by the Defendants. Minnesota law does not permit this. Because the Trustee has not, and cannot, allege that Defendants did anything to constitute fraudulent concealment, the Amended Complaint fails to state a claim for fraudulent concealment as a matter of law, and the Court must dismiss the Trustee's claims based on time barred transfers.

2.   **The Trustee fails to plead fraudulent concealment with the particularity as required by Fed. R. Civ. P. 9(b).**

Any attempt to use fraudulent concealment to toll the limitations period also fails because the Trustee did not plead fraudulent concealment with particularity as required by Fed. R. Civ. P. 9(b). In *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007), the Eighth Circuit held that when considering state law claims of fraudulent concealment, "federal procedural law requires that allegations of . . . fraudulent concealment for tolling purposes, be pleaded with particularity." (citing Fed. R. Civ. P. 9(b).)[11] With a fraudulent concealment claim, like other fraud claims, Rule 9(b) requires particularized pleading of "the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* (internal citations omitted). Nor will conclusory allegations suffice. As the *Great Plains* Court explained, "although we must

---

[11] *Great Plains* was decided under Kansas tolling rules, but the relevant principle is the same: a federal court considering state law fraudulent concealment claims must "apply state tolling law but also apply federal procedural law." 492 F.3d at 995.

take all factual allegations as true when considering a motion to dismiss, we need not accept conclusory legal allegations as true." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

In *Great Plains,* the Eighth Circuit affirmed dismissal based on the plaintiff's failure to plead with particularity any of the following elements of fraudulent concealment: (1) "what actions [defendant] took to fraudulently conceal the cause of action"; (2) "when or how [defendant] perpetrated the alleged concealment"; and (3) "why [plaintiff] could not have discovered its claims within the statutory period." 492 F.3d at 996. *Great Plains* thus held that "[w]ithout more, even at this stage of litigation, [plaintiff's] tolling argument fails." *Id.*

The Trustee's fraudulent concealment allegations in the Amended Complaint do not come close to alleging the "who, what, when, where, and how" of the fraudulent concealment purportedly at issue in this case. The Trustee instead relies on conclusory labels, asserting without any particularity "adverse domination" of the Petters-related entities, "breach of fiduciary duty" to those entities, and "fraudulent and intentional concealment of the facts" constituting the "ongoing fraud." (*See* Am. Compl. ¶¶ 54-56, 58.) The Amended Complaint contains no well-pleaded allegations, let alone *particularized* allegations concerning concealment of the alleged fraudulent transfers at issue in this case by Defendants. It rests instead on bare legal conclusions about the generalized concealment inherent in any fraudulent business enterprise.

Indeed, the Amended Complaint exhibits all the deficiencies held fatal by the Eighth Circuit in *Great Plains.* As in *Great Plains,* the Amended Complaint here fails to plead: (1) "what actions [Petters et al.] took to … conceal" the purportedly fraudulent transfers to Defendants; (2) "when or how [Petters et al.] perpetrated the alleged concealment" of those transfers to Defendants; or (3) "why [a § 544(b) creditor-plaintiff] could not have discovered"

the purported claims against Defendants sooner. *See Great Plains, supra,* 492 F.3d at 996. The Trustee's fraudulent concealment claims thus fail under the express terms of Fed. R. Civ. P. 9(b), and the Court must reject them as a matter of law.

### C.     The Limitations Period is Not Tolled by 11 U.S.C. § 546(a).

The Court should reject any assertion by the Trustee that the statute of limitations is tolled by 11 U.S.C. § 546(a). Nothing in the text of § 546 preserves or extends the limitations period which may apply to a claim. Indeed, § 546(a) of the Code is, by its title, a "limitation on avoiding powers." Instead of extending a state statute of limitations, the provision on its face places an additional time bar on a trustee's ability to commence avoidance actions premised on state law.

*In re Quality Pontiac Buick GMC Truck, Inc.*, this court recognized that § 546(a) is an independent limitation, based not upon the event which is the subject of the complaint, but solely on events relevant to the bankruptcy filing. 222 B.R. at 870 n.11. As the Eighth Circuit stated in interpreting a prior version of § 546, "[s]ection 546(a)(1) is a provision of limitation, not a provision designed to allow the chapter 7 trustee to maximize recovery for the chapter 7 estate. The purposes of this section then, like most statutes of limitations, are to bring finality to an issue and to prevent stale claims." *McCuskey v. Central Trailer Servs., Ltd. (In re Rose Way, Inc.)*, 37 F.3d 1329, 1333 (8th Cir. 1994). Neither of such purposes are served by a construction of § 546(a)(1) which would make it a "tolling" provision, rather than a statute of limitations. As noted by the Eighth Circuit, "if Congress had intended such an interpretation, it would have explicitly provided for it." *Id.*

Although there are cases which have held that the filing of the bankruptcy petition somehow "tolls" the running of the state statute of limitations during the time period referenced in § 546(a), these cases are wrongly decided, evidenced by, among other things, disagreement

even among the courts in these cases, regarding how they arrive at their "tolling" conclusions. *See Richardson v. Preston* (*In re Antex, Inc.*), 397 B.R. 168, 174 (1st Cir. B.A.P. 2008). The express language of § 546(a) leads to one conclusion: a bankruptcy trustee must, in asserting her or his claim, meet the requirements of both the limitation periods created by § 546(a), which limits his standing to assert state law claims, *and* the requirements of the state's applicable statute of limitations, measured by the date the trustee's action is commenced. "We interpret the [bankruptcy] Code according to its plain meaning unless doing so would produce a result clearly contrary to the intent of its drafters." *Harmon v. United States ex. rel. FMHA*, 101 F.3d 574, 583 (8th Cir. 1996) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-42 (1989)).

Section 544 has two separate clauses: first, subsection (a), sometimes referred as the "strong arm" clause; and second, subsection (b), which is the clause that provides the Trustee standing to bring the MUFTA claims. Under subsection (a), the Trustee is given the rights a hypothetical judgment creditor and a hypothetical bona fide purchaser would have "as of the commencement of the case." The phrase "as of the commencement of the case" is repeated four times in § 544(a). It is not found at all in § 544(b), the language of which stands in stark contrast to § 544(a):

> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title. . . .

Under subdivision (b), a bankruptcy trustee is given only the rights of one or more *actual* unsecured creditors with allowable claims as discussed *infra* in section III.A. The rights given are not those of a hypothetical creditor, but the rights of actual creditors with allowable claims. Additionally, the defined rights are not suspended or defined as of a specific time, e.g., "as of the commencement of the case," as in subsection (a). Congress clearly knew how to identify and

preserve rights as of a specific date if it wished.  It did so in § 544(a).  It did not do so in § 544(b).

Section 546(a) and Minn. Stat. § 541.05, subd. 1(2), are dual, parallel limitations on a trustee's claims asserted under state law, and brought through the standing provided by § 544(b).  Some courts, however, like the court in *In re Antex, Inc.*, have incorrectly applied the state statute of limitations and § 546(a) sequentially, thereby extending the applicable limitations period by the time period referenced in § 546(a).  397 B.R. at 174.  Defendants submit that cases holding that the filing of a bankruptcy petition somehow suspends the state law statute of limitations are based on uncertain and shaky grounds.  Many, such as *In re Antex, Inc.*, simply recite that other cases have so decided, without analysis.  *Id*.  Other courts have cited 11 U.S.C. § 108(a) as authority for tolling such statutes of limitations.  *See Lippe v. Bairnco Corp. (In re Keene Corp.)*, 225 B.R. 846, 853 (S.D.N.Y. 1998); *Meeks v. Healthcorp of Tenn., Inc.* (*In re Southern Health Care of Ark., Inc.*), 299 B.R. 918, 922 (Bankr. E.D. Ark. 2003).  Other courts have simply held, on policy grounds, the period should be extended through the time period referenced in § 546(a).  None of these arguments withstand scrutiny based on the statutory language.

(a)  <u>Policy Rational</u>.  The policy reasons for extending the state law limitations period by the time period referenced in § 546(a) are weak at best.  Congress, if it wished to have an extended reach back for fraudulent transfer claims, need not rely on the vagaries of state law and the interaction of state statute of limitations and federal law.  Congress could, by modification of the bankruptcy fraudulent transfer provision, § 548, directly reach back further than two years.  However, Congress has clearly indicated a policy of limiting the reach back period of a trustee

under the Code.  Under § 548, the reach back period is two years, and until recently was only one year.

Thus, Congress' policy, in terms of an appropriate reach back period, is clearly expressed in the federal statute.  However, as in other areas of bankruptcy law, if a particular state wishes to provide for longer or more extensive fraudulent conveyance relief in favor of creditors, then Congress provided the trustee with standing to assert such claims under § 544(b).  That section allows a trustee to assert existing creditors' claims to avoid transfers more than two years before the petition was filed, if state law reaches further back.  However, since state law, as thus applied, is already an expansion of the avoidance powers designed by Congress, there can be no reasoned argument that such state law remedies should be further expanded by an ill-defined federal "policy" of tolling.  No language supporting this "policy" can be found in § 546 or in § 544(b).

(b)     11 U.S.C. § 108(a).  Other courts have found that § 108(a) of the Code tolls, in the trustee's favor, state statute of limitations running on state fraudulent transfer claims.  The plain language of § 108(a), however, does not support such tolling.  The section extends deadlines within which "the debtor may commence" an action, in favor of the trustee.  Section 108(a) has no application to an avoidance action under § 544(b) because such an action is not an action which the debtor has standing to assert.  *See Lassman v. Burgess Constr. Servs., Inc.* (*In re Sears Petroleum & Transp. Corp.*), 417 F. Supp. 2d 212, 223-25 (D. Mass. 2006); *Krigel v. Nobel* (*In re Am. Energy Trading, Inc.*), 291 B.R. 159, 165 n.10 (Bankr. W.D. Mo. 2003).  This Court has made note of § 108 in this context, but only in dicta.  *See Mosier v. Cargill Fin. Servs. Corp.* (*In re Mansfield Corp.*), 339 B.R. 194, 199-200 (Bankr. D. Minn. 2006).  This Court, however, clearly has recognized the distinction between a claim of the debtor, which the trustee has

standing to assert, and claims of third parties provided to the trustee under § 544. *See In re Quality Pontiac, Buick, GMC Truck, Inc.*, 222 B.R. at 871. The avoidance claims at issue here are not claims of the debtor, but rather claims of creditors under state law. Absent § 544(b), the Trustee would have no standing to assert such claims. However, § 108(a) has no application to claims of creditors or related deadlines. This distinction has also been recognized by at least one bankruptcy appellate panel. "Bankruptcy Code § 108(a) refers to pre-filing causes of action belonging to the debtor and not to a cause of action created by the Bankruptcy Code." *Andrew v. Coopersmith* (*In re Downtown Inv. Club III*), 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988); *see also First Union Nat'l Bank v. Gibbons* (*In re Princeton-New York Investors, Inc.*), 219 B.R. 55, 58-59 (D.N.J. 1998).

Thus, the cases asserting the filing of the bankruptcy petition somehow tolled state statute of limitations are unsupported by the Code sections upon which such courts base their arguments. Additionally, such cases ignore a substantial line of cases which find that a federal court, when applying a state statute of limitations, must apply state computation of the statute, including rules as to when an action is commenced.[12]

### D. The Trustee's Limitations Argument Leads to Unreasonable Results.

In addition to the legal defects discussed above, the Trustee's position on limitations also flunks the test of common sense. If the Trustee were right, then a fraudulent business that evades discovery for 10, 20, 30 years or even longer would expose all the innocent parties that engage in any transaction with it to so-called "clawback" claims for however long the fraudfeasor stays in business. By its nature, a "Ponzi scheme" or other fraudulent enterprise is premised on

---

[12] Defendants reserve the right to argue that effective service of the complaint under Minnesota state law, not federal law, tolls the statute of limitations, as argued by defendant Stuart Romenesko in Section VII.A.(4) of his Memorandum in Support of Motion to Dismiss (Case No. 10-4410; Dkt. No. 7).

concealment of its wrongdoing, concealment that is the essential predicate for perpetrating any fraud. But by the Trustee's logic, this concealment means that decades after the fact – when a fraud is finally exposed – a bankruptcy trustee can come in and demand (for example) that lenders whose relationship with the debtor ended years earlier be forced to defend against massive monetary claims long after memories have faded, documents are gone and witnesses have disappeared.

This result collides head-on with the settled, common sense policies underlying all statutes of limitation. In Minnesota (as elsewhere), courts recognize that statutes of limitation protect vital interests of fairness to defendants and proper administration of justice. *See Dalton v. Dow Chemical Co.*, 280 Minn. 147, 153 n.2, 158 N.W.2d 580, 584 n.2 (1968) ("The purposes of statutes of limitations are the repose of the defendant and the fair and effective administration of justice."). Allowing claims to go forward based on long-ago events not only deprives defendants of their right to repose, but it risks that justice will not be served due to the evidentiary problems that grow with the passage of time:

> Statutes of limitation represent a legislative judgment that it is unjust to fail to put an adversary on notice to defend within a specified period of time. They protect defendants and the court from litigating stale claims in which the search for truth may be seriously impaired by the loss of evidence, the death or disappearance of witnesses, fading memory, and the disappearance of documents.

*H.D. v. White*, 483 N.W.2d 501, 503 (Minn. Ct. App. 1992); *see also Wichelman v. Messner*, 83 N.W.2d 800, 817 (Minn. 1957) (statutes of limitation "spare … the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost."); *K.E.S. v. United States*, 38 F.3d 1027, 1030 (8th Cir. 1994) (statutes of limitation "'protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence'") (quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).

These fundamental policies starkly highlight the unreasonableness of the Trustee's argument. If limitations are tolled by virtue of the concealment inherent in any fraud-based enterprise, then innocent parties can be exposed to massive "clawback" claims like this one effectively forever. That result makes no sense, and it is contrary to fair treatment of innocent defendants, contrary to sound administration of justice and contrary to the Minnesota legislature's judgment that a strict six-year period is sufficient for claims based on this State's statutes. *See, e.g., Johnson, supra,* 421 U.S. at 463-64 ("the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones"). The Court should enforce the six-year limitations period, and dismiss any claims based on transfers occurring prior to October 9, 2004.

### E. Any Claims Based on Transfers Occurring Before October 9, 2004 are Time Barred and Must be Dismissed.

Fraudulent transfer claims against Defendants based on transfers that occurred prior to the filing of the original Complaint, i.e., October 9, 2004, are time barred and must be dismissed. (Dkt. No. 1.)[13] The Trustee sets out some of the dates of the alleged fraudulent transfers to certain Defendants in Exhibit A to the Amended Complaint. Those transfers to certain Defendants include:

| Named Defendant | Number of Barred Transfers and Time Range | Total Amount Barred |
|---|---|---|
| Lancer Financial Services, LLC (Combined Deals) | 38 transfers between 1/17/02 – 12/19/03 | $76,065,724.90 |
| Lancer Financial Services, LLC (Individual Deals) | 36 transfers between 6/20/01 – 9/15/04 | $33,053,083.25 |
| Jack Young | 2 transfers | $ 2,546,072.74 |

---

[13] The Trustee did not file the Amended Complaint naming Mathews and the Foundation until February 1, 2011. (Dkt. No. 34.) Thus, any claims based on transfers to Mathews and the Foundation occurring prior to February 1, 2005, are barred and the Court should dismiss them.

| Named Defendant | Number of Barred Transfers and Time Range | Total Amount Barred |
|---|---|---|
| | between 5/8 – 8/20/01 | |
| Falcon Partners, Ltd. | 4 transfers between 1/16/02 – 1/23/03 | $ 3,718,781.95 |
| Davison Petroleum Products, LLC | 14 transfers between 5/25/01 – 9/26/02 | $23,312,658.15 |

Because those transfers occurred prior to October 9, 2004, the statute of limitations bars them and the Court must dismiss the claims as to those transfers. Moreover, any claims found to be based on transfers not listed on Exhibit A to the original Complaint that occurred before October 9, 2004, also are time barred and should be dismissed.

Even if the Court finds that § 546(a) of the Code does toll the statute of limitations, any transfers that occurred before October 11, 2002 (six years prior to the October 11, 2008 bankruptcy petition filing) are barred. This includes the following transfers listed in Exhibit A.

| Named Defendant | Number of Barred Transfers and Time Range | Total Amount Barred |
|---|---|---|
| Lancer Financial Services, LLC (Combined Deals) | 20 transfers between 1/17/02 – 10/9/02 | $23,540,359.30 |
| Lancer Financial Services, LLC (Individual Deals) | 25 transfers between 6/20/01 – 9/30/02 | $ 3,696,795.66 |
| Jack Young | 2 transfers between 5/8 – 8/20/01 | $ 2,546,072.74 |
| Falcon Partners, Ltd. | 1 transfer on 1/16/02 | $ 1,326,346.54 |
| Davison Petroleum Products, LLC | 14 transfers between 5/25/01 – 9/26/02 | $23,312,658.15 |

Additionally, the Court should dismiss any claims based on transfers occurring prior to October 11, 2002, that the Trustee did not specifically identify in Exhibit A to the Amended Complaint.

## II.    NONE OF THE FRAUDULENT TRANSFERS CLAIMS (COUNTS II – V) STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In Count II of the Amended Complaint, the Trustee seeks to avoid payments to Defendants as actual fraudulent transfers.  In Counts III, IV and V of the Amended Complaint, the Trustee seeks avoidance of the payments as constructive fraudulent transfers.  All of the Trustee's fraudulent transfer claims fail to state a claim upon which relief can be granted for three separate reasons:  (1) the Trustee lacks standing to assert the state law statutory fraud claim because the Trustee failed to identify a "golden creditor;" (2) the Trustee failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b); and (3) the Debtor received reasonably equivalent value in return for the transfers.  Accordingly, the Court should dismiss Counts II – V of the Amended Complaint.

### A.    The Trustee Lacks Standing to Assert State Law Fraud Claims (Counts II - V) Because He Failed to Identify a Golden Creditor.

The Trustee lacks standing under § 544(b) of the Bankruptcy Code to assert claims under the MUFTA because he failed to identify a "golden creditor" with standing to sue for state law fraud claims.  Section 544(b) states, in relevant part: "[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title or that is not allowable only under § 502(e) of this title."  11 U.S.C. § 544(b)(1).  Under § 544(b), the Trustee's right to assert a state law claim is "derivative of whatever rights the alleged creditor had under state law."  *Kaliner v. Load Rite Trailers, Inc. (In re Sverica Acquisition Corp., Inc.)*, 179 B.R. 457, 465 (Bankr. E.D. Pa. 1995).  The Trustee "bears the burden of proving the existence of a qualified unsecured creditor: a creditor holding an allowable unsecured claim who could bring the same avoidance action the Trustee is bringing."  *Williams v. Marlar (In re Marlar)*, 252 B.R. 743, 754 (B.A.P. 8th Cir. 2000) (quotation omitted).  "If the

creditor is estopped or barred from recovery for some reason, so is the trustee."  *Id.* (quotation omitted).

When determining whether § 544(b) standing has been sufficiently pled, certain courts have required the trustee to identify a *specific* creditor with standing under state law.  *See*, *e.g.*, *In re Sverica Acquisition Corp., Inc.*, 179 B.R. at 465; *Neilson*, 290 F. Supp. 2d at 1148.  Other courts have permitted bankruptcy trustees to identify only a specified *category* of creditors with standing.  *See Responsible Person of Musicland Holding Corp. v. Best Buy Co., Inc. (In re Musicland Holding Corp.)*, 398 B.R. 761, 780-81 (Bankr. S.D.N.Y. 2008); *Global Crossing Estate Representative v. Winnick*, No. 04-2558, 2006 WL 2212776, at *11 (S.D.N.Y. Aug. 3, 2006).  Thus to survive a motion to dismiss his MUFTA claims, the Trustee here must identify a specific creditor—or at the very least a specific category of creditors—who has standing to sue under MUFTA.[14]  But here the Trustee has failed to do either.  Instead, he does nothing more than baldly allege that there exists "one or more creditors" holding allowable unsecured claims who could avoid payments to Defendants under non-bankruptcy law.  (Am. Compl. ¶¶ 79, 85, 91, 97.)  These "naked assertions" of the existence of a creditor with standing are insufficient. *See Iqbal*, 129 S. Ct. at 1949.  Accordingly, the Court should dismiss the fraudulent transfer claims for lack of standing.

### B.     The Trustee's Actual Fraud Claim (Count I) Fails Under MUFTA.

In Court II of the Amended Complaint, the Trustee asserts an actual fraudulent transfer claim under Minn. Stat. § 513.44(a)(1) against Defendants.  The Court must dismiss the actual

---

[14]  Additionally, to state a claim under Minn. Stat. § 513.45(a), the Trustee must identify a creditor—or at the very least a category of creditors—whose claims arose before the payments to Defendants at issue.  *See* Minn. Stat. § 513.45(a) ("A transfer made or obligation incurred by a debtor is fraudulent *as to a creditor whose claim arose before the transfer was made* . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .") (emphasis added).

fraudulent transfer claim for two reasons. First, the satisfaction of obligations under valid loans is not fraudulent as a matter of law. Second, the Trustee failed to plead actual fraud with particularity as required by Fed. R. Civ. P. 9(b).

### 1. Satisfaction of obligations under valid loans is not fraudulent as a matter of law.

To state a claim for actual fraudulent transfer under MUFTA, a plaintiff must allege that the debtor made such transfer "with actual intent to hinder, delay or defraud any creditor of the debtor." Minn. Stat. § 513.44(a)(1). The Trustee here cannot state a claim for actual fraudulent transfer as a matter of law because the transfers he seeks to avoid constitute the Debtors' satisfaction of valid, antecedent debts to a lender under arm's length loan agreements. Case law has firmly established that even where a debtor conducts a fraudulent scheme, its repayment of an enforceable loan is not fraudulent as a matter of law. Such repayment results in a dollar-for-dollar reduction of the debtor's liabilities and does not put the debtor's assets outside the reach of creditors – to the contrary, it puts assets *in* the hands of creditors.

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005) (hereinafter "*Sharp*") is the leading case establishing that repayment of a valid, antecedent debt under an arm's length loan agreement is not recoverable as a fraudulent transfer. In *Sharp*, the Second Circuit affirmed the dismissal of actual and constructive fraud claims that sought to disgorge the repayment of a loan that State Street Bank and Trust Company ("State Street") had extended to Sharp. *Id.* at 53, 56. The plaintiffs in that case alleged that Sharp ran a fraudulent scheme by inventing customers and falsifying sales, inventory and accounts receivable to report inflated revenue in order to borrow money from a succession of banks and other lenders, including State Street. *Id.* at 46. Sharp's controlling shareholders then looted the corporation of the loan proceeds and other corporate profits. *Id.* at 46-47. State Street extended

financing to Sharp without knowledge of the fraudulent scheme; however, State Street later learned of the fraud through due diligence conducted when approximately $15 million of State Street loans remained outstanding. *Id.* at 47-48. State Street then "demanded and obtained Sharp's agreement to secure new financing from investors unaware of the fraud, and to use that financing to pay off State Street's line of credit." *Id.* at 47. State Street ignored inquiring calls from the noteholders from whom Sharp sought new financing and did not warn the noteholders about the fraud. *Id.* at 48. Sharp repaid State Street's loan from the new financing, which enabled Sharp's fraud to continue. *See id.*

The *Sharp* trustee later sought to avoid Sharp's repayment of the State Street loan as a fraudulent transfer under New York's Uniform Fraudulent Conveyance Act. *Id.* at 48. The Second Circuit affirmed the dismissal of both the actual and constructive fraud claims, finding that repayment of State Street's valid loan was not a transfer made with actual intent to hinder, delay or defraud. *Id.* at 56. In affirming the dismissal of the actual fraud counts, the court stated that "the fraud alleged in the complaint relates to the manner in which Sharp obtained new funding from the Noteholders, not Sharp's subsequent payment of part of the proceeds to State Street. The $12.25 million payment was at most a preference between creditors and did not 'hinder, delay or defraud either present or future creditors.'" *Id.*

Other U.S. Courts of Appeal have reached the same conclusion as *Sharp*: that payment on a valid loan cannot be made with actual intent to hinder, delay or defraud. For example, in *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474 (7th Cir. 2005), the Seventh Circuit affirmed dismissal of fraudulent transfer claims alleging that the transferor perpetrated a fraud and repaid a debt to a lender after the lender determined the borrower was a bad credit risk and "suspected . . . mischief was afoot." *Id.* at 476, 478. Judge Easterbrook differentiated between early

investors in a Ponzi scheme who receive the "fruits of a fraud" in the form of "exorbitant returns, inducing them to shill for the venture," on the one hand, and an arm's length lender who extends credit to a "Charles Ponzi . . . at the market price, in the ordinary course of its business," on the other. *Id.* at 477. Repayment of the latter ahead of other creditors is merely a preference, and cannot be avoided under an actual or constructive fraudulent transfer theory. *Id.* at 477-78.[15] *See also Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504, 1510-11 (1st Cir. 1987) (affirming lower court's denial of actual fraud claim where transferor, through fraudulent means, obtained funds used to repay honest debt to transferee, and noting that though such transfer may have been preferential it was not an actual fraud as a matter of law); *Henry v. Lehman Commer. Paper, Inc. (In re First Alliance Mortg. Co.)*, 471 F.3d 977, 1009 (9th Cir. 2006) (repayment of obligations to bank under Master Purchase Agreement were not fraudulent notwithstanding fact that bank assisted the debtor in perpetrating fraudulent predatory lending scheme). Notably, the Minnesota Supreme Court has also endorsed the fundamental principle that "[p]ayment of an honest debt is not fraudulent under the general statutes against fraudulent conveyances although it operates as a preference, the rule being that a preference by an insolvent debtor of one of his creditors can be avoided only by appropriate proceedings under the bankruptcy law and is not open to attack in an action brought by another creditor." *Johnson v. O'Brien,* 275 Minn. 28, 31 (Minn. 1966).

---

[15] The one exception to this rule noted by the *Sharp* and *B.E.L.T.* courts is a transfer to an insider, which exception is inapplicable here. *Sharp*, 403 F.3d at 56-57 ("actual intent [may be] adequately alleged where the payment in question 'effectively transferred substantial assets from the corporation to [insiders] with the potential intent of defrauding future judgment creditors'") (quoting *HBE Leasing v. Frank*, 48 F.3d 623, 640 (2d Cir. 1995)); *B.E.L.T.*, 403 F.3d at 478 (repayment of debts of company engaged [in fraud] is not in itself fraudulent, except perhaps when the transfers are to corporate "insiders and their cronies").

The holdings of "loan repayment" cases like *Sharp*, *B.E.L.T.* and *Boston Trading* and the Minnesota Supreme Court's directive in *Johnson v. O'Brien* are consistent with the overriding purpose of fraudulent transfer law, which "is to prevent debtors from putting property which is available for the payment of their debts beyond the reach of their creditors." *Shields v. Goldestky (In re Butler)*, 552 N.W.2d 226, 231 (Minn. 1996); *see also Ries v. Wintz Props., Inc. (In re Wintz Cos.)*, 230 B.R. 848, 859 (B.A.P. 8th Cir. 1999). The fraudulent transfer laws are not concerned with remedying preferences among creditors. *See Boston Trading*, 835 F.2d at 1511.

Here, the Trustee is attempting to avoid a preference among creditors – not a fraudulent transfer – by seeking to recover payments made by the Debtors in satisfaction of valid obligations under lending agreements. On its face, the Amended Complaint establishes that the Debtors' obligations to Defendants under the promissory notes or loan agreements were valid debts created at arm's length. (*See* Am. Compl. ¶ 44 ("On numerous occasions, investors entered into a number of Promissory Notes (the "Notes") with PCI. Under the terms and conditions of the Notes, Defendants made funds available to PCI . . . ."); ¶ 52 ("In addition to the PCI Note Transactions, certain Defendants provided loans to PCI and or Redtag (now PGW) through Loan and Security Agreements dated August 29, 2001 and September 18, 2001, and possibly others, among Redtag, PCI, Defendant Lancer Financial Services, LLC and one or more of the Defendants . . . .").)

Significantly, the Trustee does not allege that the Debtors' obligations to Defendants under the promissory notes are invalid nor does the complaint seek avoidance of the Debtors' underlying obligations to Defendants as fraudulent transfers. The challenged loan payments to Defendants simply satisfied enforceable obligations under valid loans, and thus could not hinder, delay or defraud creditors as a matter of law.

Notably, the Amended Complaint also contains no well-pleaded allegations that the contractually bargained for returns received by Defendants were commercially unreasonable (unlike the exorbitant returns promised to investors in the typical "Ponzi scheme" case). Indeed, other than conclusory statements alluding to "high rates of returns," the Amended Complaint fails to contain any specific allegations as to the rate of Defendants' returns under the Notes or Loan and Security Agreements or how and why such rates were commercially unreasonable. (*See generally* Am. Comp. ¶ 49.) The absence of well-pleaded allegations of commercial unreasonableness mandates that the actual fraud counts be dismissed. *See In re Unified Commercial Capital, Inc.*, 260 B.R. 343, 353 (Bankr. W.D.N.Y. 2001) (holding rate of 12% per annum to be commercially reasonable on the pleadings and dismissing actual fraudulent transfer claim under § 548(a)(1)(B) of the Bankruptcy Code).

This case thus aligns squarely with the "loan repayment" cases like *Sharp, B.E.L.T.* and *Boston Trading*. As such, Defendants extension of financing differs fundamentally from the transactions at issue in cases finding actual fraud in redemption payments to Ponzi scheme investors. Typically in those cases (including in the cases the Trustee has previously cited as support for a "Ponzi scheme presumption" in briefings before this Court)[16] the size of the promised return, among other features of a classic Ponzi scheme, is an invitation to the investor to recognize the fraud at the outset. *See, e.g., Jobin v. McKay (In re M&L Bus. Mach. Co., Inc.)*, 84 F.3d 1330, 1332-34 (10th Cir. 1996) (transferor promised annual return of *120-468%* and made payments by the irregular means of post-dated checks distributed at the outset of the investment); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995) (promised return of *10-20%*

---

[16] *See, e.g.,* Chapter 7 Trustee's Notice of Hearing, Motion and Memorandum of Law for Partial Summary Judgment, *Stoebner v. Richie Capital Mgmt., et al. (In re Polaroid Corp.)*, Adv. No. 09-4032 (GFK) (Dkt. No. 64), Oct. 1, 2010 at 44, n.10.

*per month* for investment in limited partnership); *Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Group, Inc.)*, 916 F.2d 528, 539 (9th Cir. 1990) (promised returns were "*grossly in excess* of the value [the investor] exchanged for the transfer" and court found "a strong indication that [the investor] not only knew of the fraud, but was an active participant in it as well"); *In re Indep. Clearing House, Co.*, 77 B.R. 843, 848 (Bankr. D. Utah 1987) (investors received return of *8.4% per month*). The other situation seen in such cases is an equity investor who sought to reap uncapped profits of the Ponzi scheme, rather than lenders who received repayment of principal and a contractually bargained-for rate of return. *See, e.g. In re Slatkin*, 525 F.3d 805, 809-910 (9th Cir. 2008) ("investors" in Ponzi scheme received "millions of dollars in purported profits").

Here, in contrast to such "Ponzi scheme investor" cases, the alleged challenged transfers were in satisfaction of arm's length obligations under valid lending agreements. Such transfers were not, and could not be, fraudulent as a matter of law. Therefore, the Court should dismiss Count II of the Amended Complaint.

> **2.  The Trustee fails to plead actual fraudulent transfer with particularity as required by Fed. R. Civ. P. 9(b).**

To prove the loan repayments are fraudulent transfers, the Trustee must plead and prove that a debtor made the payments "with the actual intent to hinder, delay or defraud" its creditors. Minn. Stat. § 513.44(a). Such allegations of an actual fraudulent transfer are subject to the heightened pleading requirement of Fed. R. Civ. P. 9(b) and must be pled with particularity. *Kranz v. Koenig*, 240 F.R.D. 453, 455 (D. Minn. 2007); *Feldman v. Chase Home Finance (In re Image Masters, Inc.)*, 421 B.R. 164, 183 (Bankr. E.D. Pa. 2009) (dismissing actual fraudulent transfer claims arising from Ponzi scheme for failure to plead fraud with particularity).

To survive a motion to dismiss, the Trustee must allege facts supporting the conclusion that the transfers to Defendants were made with the intent to hinder, delay or defraud creditors, and must specifically allege the who, what, where, when and, most importantly, the *how* of the fraud. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (dismissing claims sounding in fraud for failure to plead the "who, what, where, when, and how" of the fraud and finding that allegations based on information and belief are insufficient to meet Rule 9(b) particularity standard). As the *Image Masters* court explained, even in a case involving a Ponzi scheme, "a plaintiff must plead the requisite fraudulent intent with respect to each transfer sought to be avoided and must connect the allegations against the defendant to the debtor's scheme to defraud creditors." 421 B.R. at 183. Moreover, the complaint must "set forth factual allegations of fraudulent intent in connection with the specific transfer sought to be avoided and must show some direct connection between a defendant and a debtor's fraudulent Ponzi scheme. *Id.* at 186.

Here, the Amended Complaint comes nowhere near meeting the particularity standard in Rule 9(b). The Amended Complaint contains no particularized allegations of Debtors' fraudulent intent in making the loan repayments to Defendants. Instead, the only allegations related to actual fraud asserted in the Amended Complaint concern the Debtors' *incurrence* of obligations to lenders and investors and the way the Debtors *obtained* the funds used to repay Defendants' loans – transactions that the Trustee does not seek to avoid. (*See, e.g.* Am. Compl. ¶ 49 (high rates of return *enticed investors to invest* in the Debtors without conducting reasonable due diligence and enabled Petters to extend the life of fraud by paying out investors); ¶ 51 ("Repayment of the Principal and interest in the form of False Profits to these investors comprised a Ponzi scheme because the payments consisted primarily, if not exclusively, of funds invested by other PCI investors."); ¶¶ 47, 50-51 (investments were based on fraudulent and

fictitious documents and financial transactions); ¶ 70 (source of challenged payments to Defendants was money raised from other investors).)  Notably, the Trustee completely fails to allege how the transactions he seeks to avoid – i.e. the *repayment* of the Defendants' loans – hindered, delayed or defrauded the Debtors' creditors.

Beyond that, the Amended Complaint fails to identify any facts detailing the who, what, where, when, and how of the alleged fraud.  Notably, the Trustee does not allege what Petters' entity received and repaid the loan monies from and to each individual Defendant, the dates of many of the transfers, how the monies were transferred, or where the monies were transferred.  Indeed, the Trustee only identifies the dates and amounts of a handful of transfers compared to the amount he claims was allegedly transferred.  (*Compare* Am. Compl. Ex. A *with* Am. Compl. ¶ 66.)

Nor does the Amended Complaint fare any better in pleading "badges of fraud."  Because actual intent is often not susceptible to proof by direct evidence, courts traditionally evaluate actual fraud claims using circumstantial indicia of intent, or "badges of fraud."  *Leonard v. Mylex Corp. (In re Northgate Computer Sys.)*, 240 B.R. 328, 360 (Bankr. D. Minn. 1999); *see also* Minn. Stat. § 513.44(b) (listing badges of fraud).[17]  Inferring intent is proper if a plaintiff establishes a "confluence of several badges of fraud."  *Kelly v. Armstrong*, 141 F.3d 799, 802

---

[17] The badges of fraud include:  (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."  Minn. Stat. § 513.44(b).

(8th Cir. 1998). A single badge is not enough, "no matter the strength of the evidence." *In re Northgate Computer Sys.*, 240 B.R. at 364.

Here, however, the only badges of fraud enumerated in MUFTA that the Trustee has arguably pled are insolvency and removal of assets, both of which concern the Debtors' businesses generally and have no specific tie to the challenged loan payments. *See, e.g.*, Am. Compl. ¶ 52 (the transfers were "used to pay prior investors"); ¶ 98 ("At all times material hereto, the Debtors at the time of the [challenged loan payments] were insolvent or, in the alternative, the Debtors became insolvent as a result of the [challenged loan payments]."). This generic pleading—and the related failure to tie such allegations to the specific loan payments at issue—cannot satisfy the heightened pleading requirement necessary for stating a claim for actual fraudulent transfer under MUFTA. Accordingly, the Court should dismiss Count II of the Amended Complaint.

### C. The Trustee's Constructive Fraud Claims (Counts III - V) Fail Because the Debtor Received Reasonably Equivalent Value.

Counts III, IV and V in the Amended Complaint allege claims for constructive fraudulent transfer under either the Bankruptcy Code or the MUFTA. An essential element of constructive fraudulent transfer under MUFTA is that the debtor transferred property "without receiving a reasonably equivalent value in exchange for the transfer." *See* Minn. Stat. §§ 513.44(a)(2) and 513.45(a). It is fundamental that a transfer made to satisfy an antecedent debt is in exchange for a reasonably equivalent value as a matter of law. *Sullivan v. Schultz (In re Schultz)*, 368 B.R. 832, 837 (Bankr. D. Minn. 2007); *Pardo v. Gonzaba (In re APF Co.)*, 308 B.R. 183, 187 (Bankr. D. Del. 2004) (Trustee could not state § 548 constructive fraud claim because "the payments [made on the promissory note] were made for value—satisfaction of an antecedent debt[.]") (citations and internal quotation marks omitted); *Walker v. Sonafi Pasteur (In re Aphton Corp.)*,

423 B.R. 76, 89 (Bankr. D. Del. 2010) ("Courts have held that when a transfer is made to pay an antecedent debt, the transfer may not be set aside as constructively fraudulent.").

This is true even when loan payments are received from a debtor's alleged engagement in a Ponzi scheme. *See In re Sharp Int'l*, 403 F.3d at 53-56; *Daly v. Deptula (In re Carrozzella & Richardson)*, 286 B.R. 480, 490 (D. Conn. 2002) (holding that despite the existence of a Ponzi scheme, the "proper focus of a fraudulent transfer inquiry is on the transfer itself, not the overall business practices of the Debtor").

In the Amended Complaint, the Trustee alleges in conclusory fashion that "Debtors received less than a reasonably equivalent value in exchange for the Transfers." (Am. Compl. ¶¶ 87, 93, 99.) But when pleading a constructive fraudulent transfer, the Trustee cannot simply recite "general, conclusory allegations that almost completely parrot the statutory language." *Burtch v. Dent (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349, 356 (Bankr. D. Del. 2006); *see also Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718 (Bankr. D. Del. 2005) (noting that a complaint must discuss the "value of what was received in exchange" and noting that a cribbing of the statutory elements is insufficient to establish a valid cause of action). More than that, though, the Trustee's Amended Complaint makes clear that the challenged transfers to Defendants were all in satisfaction of valid, antecedent debt under promissory notes and loan and security agreements. (Am. Compl. ¶¶ 52, 59.) Thus, on its face, the Amended Complaint acknowledges receipt of reasonably equivalent value in exchange for the loan repayments to Defendants. The Court should dismiss the Trustee's constructive fraudulent transfer claims in their entirety.

### D. The Complaint Fails on Its Face to Rebut Defendants' Good Faith Defense.

Under MUFTA, "[a] transfer or obligation is not voidable under section 513.44(a)(1) [the actual fraud statute] against a person who took in good faith and for a reasonably equivalent

value . . . ." Minn. Stat. § 513.48. As discussed above, the Amended Complaint establishes on its face that Defendants provided reasonably equivalent value in exchange for the loan repayments to PCI and Redtag. The Amended Complaint also contains no well-pleaded allegations that Defendants (i) extended credit to the Debtors with knowledge of the alleged Petters fraud, (ii) participated in the fraud, or (iii) knew of the Debtors' insolvency at the time it extended credit to the Debtors. The Amended Complaint therefore does not, and cannot, rebut Defendants' good faith defense on its face, mandating dismissal of all the Trustee's actual fraudulent transfer claims under MUFTA.

It is well settled that a defendant may establish an affirmative defense on a motion to dismiss where, as here, it stands apparent on the face of the complaint. *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985) (citing *R. W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 821 (8th Cir. 1983)); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) without resort to summary judgment procedure, if the defense appears on the face of the complaint."); *see also* 5B Wright & Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004 & 2006 Supp.) ("[A]s the case law makes clear, the complaint . . . is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar award of any remedy."); *In re Image Masters, Inc.*, 421 B.R. 164, 183 (Bankr. E.D. Pa. 2009) (granting motion to dismiss actual fraud claims under Pennsylvania's Uniform Fraudulent Transfer Act for failure to rebut good faith defense on the pleadings); *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256 B.R. 664, 676 (Bankr. S.D.N.Y. 2000) (dismissing fraudulent transfer claims for failure to allege that transfers were not "for value and in good faith"), *aff'd, Balaber-Strauss v. Lawrence*, 264 B.R. 303, 308 (S.D.N.Y. 2001). Here,

because the Amended Complaint fails to allege facts that could plausibly rebut Defendants' good faith defense, the actual fraudulent transfer claim (Count I) must be dismissed.

1. ***Sharp*** **establishes the appropriate good faith standard for loan repayments.**

In *Sharp*, the Second Circuit addressed the precise good faith question raised by the facts pled here:  if a lender extends a loan to a business engaged in fraud without knowledge of such fraud, but is later put on notice of the fraud and then accepts repayment of the loan, has the lender taken the transfer without good faith?

The *Sharp* court answered the question with a resounding, "no."  The court held that a lender's actual knowledge of the fraud at the time of repayment does not undermine the lender's good faith.  *Sharp*, 403 F.3d at 56 ("State Street's knowledge of the Spitze's fraud, without more, does not allow an inference that State Street received the $12.25 million payment in bad faith.").  The lender's "knowledge" of fraud or insolvency would only defeat its good faith defense if the lender had such knowledge at the time it extended credit.  *Id*. at 55 (distinguishing *HBE Leasing,* 48 F.3d at 637 on grounds that lender there had knowledge of illegitimate use of funds *at time it extended credit*); *see also In re Model Imperial, Inc.*, 250 B.R. 776, 798-99 (Bankr. S.D. Fla. 2000) (assessing lender's § 550(b)(1) good faith defense at time lender extended credit rather than at time lender accepted repayment transfers).  The *Sharp* court held that the lender's knowledge "has no applicability where, as here, it is undisputed that State Street's loan was made in good faith long before the purportedly fraudulent transfer."  *Sharp*, 403 F.3d at 55.

Likewise, in *Boston Trading*, the First Circuit declined to extend fraudulent transfer law to avoid two payments by a buyer to the seller of a business – one on the sale note and the other in settlement of litigation with the buyer.  At least one of the payments had been made after the

seller learned the new owners were fraudulently stripping the business. Then-Judge Breyer, writing for the court, observed:

> Whatever "good faith" may mean, however, we believe it does not ordinarily refer to the transferee's knowledge of the *source* of the debtor's monies which the debtor obtained at the expense of other creditors. To find a lack of "good faith" where the transferee does not participate in, but only knows that the debtor created the other debt through some form of, dishonesty is to void the transaction because it amounts to a kind of 'preference' – concededly a most undesirable kind of preference, one in which the claims of alternative creditors differ considerably in their moral worth, but a kind of preference nonetheless.

*Boston Trading Group, Inc. v. Burnazos,* 835 F.2d 1504, 1512 (1st Cir. 1987 (citations omitted) (emphasis in original); *see also B.E.L.T., Inc. v. Lacrad Int'l Corp*., 2002 U.S. Dist. LEXIS 23637 (N.D. Ill. Dec. 6, 2002) ("Knowledge on the part of the creditor receiving the preference that the debtor has acted with fraudulent intention is immaterial if the creditor has done nothing except to receive payment of his claim.") (quoting 37 Am. Jur. 2d Fraudulent Conveyances & Transfers § 71), *aff'd B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474 (7th Cir. 2005); *Johnson v. O'Brien*, 275 Minn. 28, 31 (Minn. 1966) (knowledge of recipient of preferential transfer not relevant in fraudulent transfer action). As all these cases show, a lender who received repayment of an antecedent debt with knowledge of the transferor's fraud or insolvency does not take with a lack of good faith.[18]

---

[18] The only exceptions to this general rule are inapplicable here: if the transferee is (i) an insider or (ii) an active participant in the fraud. *Sharp*, 403 F.3d at 54 ("One exception has been recognized . . . to the rule that repayment of an antecedent debt constitutes fair consideration: where the transferee is an officer, director, or major shareholder of the transferor") (internal quotations omitted); *see also Boston Trading*, 835 F.2d at 1516 (citing *Stuart v. Larson*, 298 F. 223 (8th Cir. 1924) for proposition that "preferences given by insolvent corporations to insiders are fraudulent"); *B.E.L.T.*, 403 F.3d at 478 (repayment of debts by company engaged in a fraudulent scheme is not in itself fraudulent, except perhaps when the transfers are to corporate "insiders and their cronies"); *Sharp*, 403 F.3d at 55 ("[T]o find a lack of 'good faith' where the transferee does not participate in, but only knows that the debtor created the other debt through some form of dishonesty is to void the transaction because it amounts to a kind of 'preference.'") (quoting *Boston Trading*, 835 F.2d at 512).

## 2. Defendants' good faith defense is established on the face of the Amended Complaint.

In this case, the Amended Complaint contains no specific allegations that Defendants had actual knowledge of the alleged Ponzi scheme, other "fraud," or the Debtors' insolvency at the time it entered into the loan agreements. Instead, the Amended Complaint simply alleges an arm's length lending relationship between a potentially dishonest borrower and an innocent lender. Similarly, the Amended Complaint also lacks well-pleaded allegations that Defendants were on "inquiry notice" of the alleged Ponzi scheme, some other generalized "fraud," or of the Debtors' insolvency at the time Defendants extended credit. Instead, the Amended Complaint relies on wholly conclusory assertions that "Defendants knew or should have known that it was benefitting from fraudulent activity, or at a minimum, failed to exercise reasonable due diligence with respect to Petters, PCI, and Regtag in connection with the Ponzi scheme," without specifying a time period at which Defendants had or should have had such knowledge or identifying the fraudulent activity that Defendants should have been aware of at the time it extended credit to the Debtors. (*See* Am. Compl. ¶ 69.) Such conclusory allegations are insufficient to rebut Defendants' good faith defense on its face under *Sharp, Boston Trading, B.E.L.T.*, and other "loan repayment" cases. The Trustee's fraudulent transfers claims under MUFTA should be dismissed in their entirety.[19]

---

[19] Furthermore, the Court must dismiss the Trustee's claims to the extent he seeks to recover from Defendants under § 550(a)(2) of the Bankruptcy Code as subsequent transferee or under § 550(1) as an "entity for whose benefit" a transfer was made. In Counts II-V, the Trustee pleads that "[t]o the extent Defendants are not an initial transferee of the Transfers, they are subsequent transferees of the initial transferees of the Transfers, and on information and belief, cannot satisfy their burden that they took the Transfers for value and in good faith." (*See* Am. Compl. ¶¶ 82, 88, 94, 100.) First, these allegations are entirely conclusory. They simply recite the statutory language verbatim and provide no factual basis in support. The complaint alleges that Defendants were the initial transferee of the Transfers (*see* Am. Compl. ¶ 36), thereby precluding any allegation that Defendants are either a subsequent transferee or the entity for whose benefit such transfers were made. *See Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 896

38

### E. The Trustee Failed to Plead Any Transfers Against Certain Defendants.

Fed. R. Civ. P. 12(b)(b) and 9(b) require the Trustee to plead enough facts to state a claim and to pled those facts with particularity for his fraudulent transfer claims. Here, the Trustee does not allege a *single* transfer to LPL, LPGP and Mathews. (*See* Am. Compl. ¶¶ 64-67, 71; Exhibit A.) For this reason alone, the Court should dismiss the Amended Complaint as to LPL, LPGP and Mathews. *See Kranz*, 240 F.R.D. at 456 (dismissing complaint where plaintiff failed to plead sufficient details regarding alleged fraudulent transfers).

## III. NONE OF THE REMAINING CLAIMS (COUNTS I, VI, AND VII) STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THEY ARE PREMATURE AND FATALLY FLAWED.

The Trustee fares no better with the remaining claims asserted in the Amended Complaint. The remaining claims include turnover and accounting (Count I), unjust enrichment/equitable disgorgement (Count VI), and disallowance (Count VII). Because these claims are premature and fatally flawed, the Court should dismiss them for failure to state a claim.

### A. The Trustee's Turnover and Accounting Claim (Count I) Fails Because the Transfers Are Not Property of the Estate.

Count I of the Amended Complaint seeks turnover and accounting of payments made to Defendants pursuant to § 542 of the Bankruptcy Code, which provides, in relevant part, that "an

---

(7th Cir. 1988) ("the categories 'transferee' and 'entity for whose benefit such transfer was made' are mutually exclusive"); *Perrino v. Salem, Inc.*, 243 B.R. 550, 561 n.8 (D. Me. 1999) (same). Second, in order to recover from a subsequent transferee under § 550(a)(2) or an entity for whose benefit a transfer was made under § 550(a)(1), the Trustee must first establish that he can avoid an underlying transfer; however, the Trustee has failed to state a claim for avoidance of *any* transfers alleged in the complaint for the reasons set forth above. Finally, § 550(b)(1) of the Bankruptcy Code provides Defendants a complete defense as a subsequent transferee because it is evident from the face of the Amended Complaint that Defendants took for value, in good faith and without knowledge of the voidability of the transfers as set forth above. *See* 11 U.S.C. § 550(b)(1).

entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under Section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property . . . ." 11 U.S.C. § 542(a). The claim fails as a matter of law because the Trustee has not established that the Defendants are in possession of the Debtors' property.

A "turnover" claim is a remedy for debtors to obtain what is admitted to be property of the bankruptcy estate; it is *not* a means to liquidate claims or demand assets whose title is in dispute. *See*, *e.g.*, *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.") (citing *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989) (turnover of property that is admitted to belong to the debtor is required)). But here the Trustee is attempting to use § 542(a) as a means of compelling the Defendants to return allegedly fraudulent transfers, an allegation the Defendants vigorously dispute. This is not a valid basis for a claim under § 542. *See*, *e.g.*, *Satelco, Inc. v. N. Am. Publishers, Inc. (In re Satelco, Inc.)*, 58 B.R. 781, 786 (Bankr. N.D. Tex. 1986) ("Unless there is *no question* remaining as to the liability of the defendant to the estate, . . . the money Debtor seeks to recover is not within the Debtor's constructive possession.") (emphasis added).

The Trustee must first prove that he is entitled to avoid the transfers at issue pursuant to §§ 548 and 550 of the Code, and only then does he have the right to seek recovery under § 542. *See Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) (holding that the chapter 11 trustee cannot compel the turnover of non-estate property under § 542 and circumvent the more restrictive fraudulent transfer claim requirements in the process); *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez*

*Constr., Inc.)*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007) (same). Where, as here, a trustee fails to allege that he has an absolute and undisputed right to recover property from the defendant, the Court should dismiss the complaint on the pleadings. *See*, *e.g.*, *Giuliano v. Fairfield Group Health Ctrs., L.P. (In re Lexington Healthcare Group., Inc.)*, 363 B.R. 713, 716 (Bankr. D. Del. 2007) (granting motion to dismiss and stating "[w]here there is a legitimate dispute about the ownership of property a trustee seeks to recover, turnover under section 542 is not appropriate"); *Liquidating Trustee v. Baker (In re Amcast Indus. Corp.)*, 365 B.R. 91, 121-22 (S.D. Ohio 2007) ("[T]o state a claim for turnover, the plaintiff must allege that the transfer of funds has already been avoided or that the property is otherwise the undisputed property of the estate."). The Trustee has failed to allege facts suggesting that he has an absolute and undisputed right to recover the alleged fraudulent transfers. Accordingly, the Court should dismiss Count I of the Amended Complaint.

**B.     The Trustee's Unjust Enrichment/Equitable Disgorgement Claim (Count VI) Fails.**

The Trustee has also failed to state a claim for unjust enrichment or equitable disgorgement. Under Minnesota law, the Trustee must allege and prove three elements to assert a claim for unjust enrichment successfully: (1) the defendant knowingly received or obtained something of value; (2) the defendant was not entitled to receive it; and (3) the circumstances are such that it would be unjust for the defendant to retain it. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996); *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). Merely because the defendant benefited from the efforts or obligations of others is not sufficient to assert a claim for unjust enrichment. *ServiceMaster*, 544 N.W.2d at 306; *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Instead, the plaintiff must establish that the defendant was

"unjustly" enriched, which means the defendant was enriched illegally, unlawfully, or as a result of fraudulent inducement or unconscionable conduct on the part of the defendant. *ServiceMaster*, 544 N.W.2d at 306; *Ramier*, 311 N.W.2d at 504; *Schumacher v. Schumacher*, 627 N.W.2d 725, 729-30 (Minn. Ct. App. 2001). Here, the Amended Complaint fails to allege a valid claim for unjust enrichment for four reasons: (1) the Trustee does not have authority to pursue this state law claim; (2) the Trustee failed to allege unlawful or illegal conduct on the part of Defendants; (3) the Trustee has an adequate remedy at law; and (4) the claim is barred by the statute of limitations.

*First*, the Court should dismiss the Trustee's claim for unjust enrichment because the Trustee does not have standing to assert this claim. In the Amended Complaint, the Trustee asserts "Defendants knowingly received monies from the Ponzi scheme [and] were unjustly enriched through receipt of the fraudulent obtained monies *to the detriment of other investors in PCI and Redtag . . . .*" (Am. Compl. ¶ 105.) (emphasis added.) Even if the allegations are true, the Trustee does not have standing to pursue unjust enrichment claims on behalf of other creditors. Several sections in the Bankruptcy Code give the Trustee power to pursue claims on behalf of the estate: (1) § 541(a)(1) (providing that the Trustee obtains all of the debtor's legal and equitable interests in property); (2) § 544 (allowing the Trustee to pursue avoidance claims); and (3) §§ 547, 548, 549 (allowing the Trustee to pursue claims under the federal law for preferences, fraudulent transfers, and post-petition transfers). But none of these sections provides the Trustee with a basis for pursuing equitable claims to recover damages on behalf of the other creditors, and the Trustee does not allege that PCI or PGW were harmed by the transfers. Because the Trustee failed to state a basis for his unjust enrichment claim, and because

no such power is granted to the Trustee, the Court should dismiss Count VI of the Amended Complaint.

*Second*, Minnesota courts have dismissed unjust enrichment claims on the pleadings where the complaint fails to allege that the defendant acted in an illegal or unlawful manner. *See Hamann v. Park Nicollet Clinic*, 2010 WL 5292605, at *4 (Minn. Ct. App. Dec. 28, 2010) ("Absent any allegations that [defendant] benefited by unlawful means or fraudulent inducement, the district court properly dismissed [plaintiff's] unjust-enrichment claim."); *see also Custom Design Studio v. Chloe, Inc.*, 584 N.W.2d 430, 433 (Minn. Ct. App. 1998) (overturning judgment for unjust enrichment because plaintiff "has not provided evidence of any fraudulent or illegal acts" by the defendant). Mere allegations that a defendant's conduct is "morally wrong" are insufficient to state a claim for unjust enrichment. *Amann v. Allianz Income Mgmt. Servs., Inc.*, 2010 WL 3220061, at *5 (Minn. Ct. App. Aug. 17, 2010). Rather, "[u]njust enrichment requires unjust or illegal conduct." *Ehlen v. Hanratty & Assoc., Inc.*, 2009 WL 3255399, at *6 (Minn. Ct. App. Oct. 13, 2009); *see also Ramette v. Digital River, Inc. (In re Graphics Tech., Inc.)*, 306 B.R. 630, 636-37 (B.A.P. 8th Cir. 2004) (affirming denial of constructive trust over funds transferred to debtor because there was no showing debtor obtained the funds through fraud or illegal conduct).

Here, the Trustee does not allege that Defendants acted in an illegal or unlawful manner by receiving payments under the promissory notes. This is no mistake. Minnesota courts have held that unjust enrichment does not occur where, as here, a "defendant is enriched by what he is entitled to under a contract or otherwise." *Schaff v. Residential Funding Corp.*, 517 F.3d 544, 554 (8th Cir. 2007) (internal punctuation omitted); *Stein v. O'Brien*, 565 N.W.2d 472, 474-75 (Minn. Ct. App. 1997). The only illegal or unlawful conduct alleged in the Amended Complaint

is that of Petters and his Associates.  (*See* Am. Compl. ¶¶ 37-56.)  But the unlawful or unjust

conduct of the *plaintiff* (and here, the Trustee stands in the shoes of the Debtors) is irrelevant and

does not give rise to a claim for unjust enrichment against Defendants.  *See Schumacher*, 627

N.W.2d at 729-30 (noting focus of unjust enrichment is on defendant's conduct).  The Trustee

has failed to allege any facts that plausibly suggest that Defendants acted illegally or unlawfully

in receiving payments under the promissory notes, and therefore the Court should dismiss his

unjust enrichment claim.

*Third*, even if the Trustee properly pled the unjust enrichment claim, the Court should

dismiss the unjust enrichment claim because the Trustee has an adequate remedy at law.  The

right of recovery for unjust enrichment is equitable.  *Southtown Plumbing, Inc.*, 493 N.W.2d at

140 (*citing Lundstrom Constr. Co. v. Dygert*, 94 N.W.2d 527, 533 (Minn. 1959)).  A plaintiff

may not invoke the equity powers of a court when the plaintiff has an adequate remedy at law.

*Borom v. City of St. Paul*, 184 N.W.2d 595, 598 (Minn. 1971); *Michael-Curry Cos. v. Knutson*

*Shareholders Liquidating Trust*, 423 N.W.2d 407, 410 (Minn. Ct. App. 1988).  Thus, courts

grant equitable relief "only upon a showing of the inadequacy of any legal remedy."  *Zimmerman*

*v. Lasky*, 374 N.W.2d 212, 214 (Minn. Ct. App. 1985).

The Trustee has alleged several state law claims for fraudulent transfer against the

Defendants.  If successful, the Trustee would receive a recovery of funds allegedly fraudulently

transferred to Defendants.  Therefore, the Trustee has an adequate remedy at law and the Court

should dismiss the claims for unjust enrichment.  *ServiceMaster*, 544 N.W.2d at 305 (reversing

award for unjust enrichment in part because plaintiff had adequate remedy at law); *Arena Dev.*

*Group, LLC v. Naegele Comm'n, Inc.*, 2007 WL 2506431, at *11 (D. Minn. Aug. 30, 2007)

("Plaintiffs' claim for unjust enrichment is dismissed.  The [Uniform Fraudulent Transfer Act]

provides Plaintiffs with an adequate remedy at law, and contains statutory standards for recovery.").

*Fourth*, the Court should dismiss most of the Trustee's claims for unjust enrichment because the statute of limitations bars them. The limitations period for unjust enrichment is six years and begins to accrue at the time of the alleged payment. Minn. Stat. § 541.05, subd.1(1); *Block v. Litchy*, 428 N.W.2d 850, 854 (Minn. Ct. App. 1988). As discussed in Section I.E above, many of the transfers identified in the Amended Complaint occurred more than six years before the Trustee filed the original Complaint. And the Trustee's claim for unjust enrichment is a state law claim that is not subject to § 546(a), even if § 546(a) is a tolling statute. (*See* Section I.C above.) Accordingly, the Court must dismiss as time-barred the unjust enrichment claims in Count VI of the Amended Complaint for transfers before October 9, 2004.

### C. The Trustee's Disallowance Claim (Count VII) Fails Because it is Premature.

The Court should dismiss the Trustee's disallowance claim in Count VII of the Amended Complaint because the Court cannot disallow a nonexistent claim. The purpose of § 502(d) is to ensure compliance with judicial orders. *Holloway v. IRS (In re Odom Antennas, Inc.)*, 340 F.3d 705, 708 (8th Cir. 2003) (*citing Campbell v. United States (In re Davis)*, 889 F.2d 658, 661 (5th Cir. 1989)). Under § 502(d), the liability of a defendant must first be determined before any claim by the defendant may be disallowed. Section 502(d) provides that a claim is disallowed "unless [the defendant] has paid the amount, or turned over any such property, for which such entity or transferee *is liable* . . . ." 11 U.S.C. § 502(d) (emphasis added); *see In re Odom Antennas, Inc.*, 340 F.3d at 708. The Eighth Circuit concluded that "[t]his language indicates section 502(d) should be used to disallow a claim *after* the entity is first adjudged liable; otherwise, the court could not determine if the exception applies." *In re Odom Antennas, Inc.*, 340 F.3d at 708 (emphasis added); *see also Hoggarth v. Kaler (In re Midwest Agri Dev. Corp.)*,

45

387 B.R. 580, 586 (B.A.P. 8th Cir. 2008) (noting that if the court does not first determine avoidability, then the court cannot determine if Section 502(d) applies).

Here, § 502(d) can apply only if the Trustee is successful in obtaining an order from this Court avoiding transfers of a claim. Interestingly, nowhere in the Trustee's Amended Complaint does he identify any claims that would even be subject to disallowance. This is no mistake – Defendants have not filed a claim with the Bankruptcy Court. As a result, the Court should dismiss the Trustee's disallowance claim as premature.

## IV. RESERVATION OF RIGHTS TO JURY TRIAL.

By filing this Motion, Defendants do not consent to the entry of final orders by the Bankruptcy Court on non-core issues and claims, and do not waive any jurisdictional defenses. By filing this Motion, Defendants are also not waiving their right to a jury trial on all issues so triable or consenting to the bankruptcy court conducting a jury trial.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the Trustee's Amended Complaint in its entirety and with prejudice.

Dated: March 10, 2011

FAEGRE & BENSON LLP

/e/ Stephen M. Mertz
_____
Stephen M. Mertz (#212131)
Jerome A. Miranowski (#125593)
S. Renee Dotson (#0387418)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000

**ATTORNEYS FOR LANCER FINANCIAL SERVICES, LLC; LANCER PARTNERS LTD.; LANCER PARTNERS GP, LLC; FARGO PETROLEUM, LLC (f/k/a DAVISON PETROLEUM PRODUCTS, LLC); FALCON PARTNERS, LTD.; HAVEN RETIREMENT FUND, LP; JAY B. JENSEN; THE D. TRUITT AND LORNA DAVIS CHARITABLE TRUST; LAMAR D. MATHEWS, AS TRUSTEE OF THE D. TRUITT AND LORNA DAVIS CHARITABLE TRUST; THE D. TRUITT AND LORNA DAVIS FOUNDATION; AND JACK W. YOUNG**

fb.us.6484285.05

47

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re

Petters Company, Inc., et al.,

        Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

Jointly Administered Under
Case No. 08-45257

Court File No. 08-45257

Court File Nos.:
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

_____

Douglas A. Kelley, in his capacity as the court-
appointed Chapter 11 Trustee of Debtor Petters
Company, Inc.,

        Plaintiff,

v.

Lancer Financial Services, LLC; Lancer Partners Ltd.;
Lancer Partners GP, LLC; Chad Clifford; Fargo
Petroleum, LLC (f/k/a Davison Petroleum Products,
LLC); EFO Holdings, L.P.; Cypress Financial Trading
Co.; Falcon Partners, Ltd.; Harbor Value Fund; Haven
Retirement Fund, LP; Jay B. Jensen; McCord
Christensen Holdings, LLC; McCord Christensen;
Susan Cowden Raybourn; J. Richard Rock; Michael
Smith; the D. Truitt and Lorna Davis Charitable Trust;
Lamar D. Matthews, as Trustee of the D. Truitt and
Lorna Davis Charitable Trust; the D. Truitt and Lorna
Davis Foundation; and Jack W. Young,

        Defendants.

ADV. NO. 10-04427

_____

## <u>UNSWORN CERTIFICATE OF SERVICE</u>

I, Susan Carlson, declare under penalty of perjury that on March 10, 2011, the foregoing Notice of Hearing and Motion to Dismiss of Defendants Lancer Financial Services, LLC; Lancer Partners LTD.; Lancer Partners GP, LLC; Fargo Petroleum, LLC (f/k/a Davison Petroleum Products, LLC); Falcon Partners, LTD.; Haven Retirement Fund, LP; Jay B. Jensen; D. Truitt and Lorna Davis Charitable Trust; LaMar D. Mathews, as Trustee of the D. Truitt and Lorna Davis Charitable Trust; D. Truitt and Lorna Davis Foundation; and Jack W. Young; Defendants Memorandum of Law in Support of Motion to Dismiss Amended Complaint and the Proposed Order Dismissing Case were served via electronic mail by automatic e-mail notification to each entity named on the Electronic Mail service list pursuant to the Electronic Case Filing System and this notice constitutes service.

Executed on: March 10, 2011            Signed:*/s Susan Carlson*
                                         Paralegal
                                         Faegre & Benson LLP
                                         2200 Wells Fargo Center
                                         90 South Seventh Street
                                         Minneapolis, MN  55402-3901

_____

In re                                          Jointly Administered Under
                                                  Case No. 08-45257
Petters Company, Inc., et al.,
                                               Court File No. 08-45257
          Debtors.

          (includes:                              Court File Nos.:
          Petters Group Worldwide, LLC;           08-45258 (GFK)
          PC Funding, LLC;                        08-45326 (GFK)
          Thousand Lakes, LLC;                    08-45327 (GFK)
          SPF Funding, LLC;                       08-45328 (GFK)
          PL Ltd., Inc.;                          08-45329 (GFK)
          Edge One LLC;                           08-45330 (GFK)
          MGC Finance, Inc.;                      08-45331 (GFK)
          PAC Funding, LLC;                       08-45371 (GFK)
          Palm Beach Finance Holdings, Inc.)      08-45392 (GFK)


                                                  Chapter 11 Cases
                                                  Judge Gregory F. Kishel

_____

Douglas A. Kelley, in his capacity as the court-
appointed Chapter 11 Trustee of Debtor Petters
Company, Inc.,

               Plaintiff,

v.                                             ADV. NO. 10-04427

Lancer Financial Services, LLC; Lancer Partners Ltd.;
Lancer Partners GP, LLC; Chad Clifford; Fargo
Petroleum, LLC (f/k/a Davison Petroleum Products,
LLC); EFO Holdings, L.P.; Cypress Financial Trading
Co.; Falcon Partners, Ltd.; Harbor Value Fund; Haven
Retirement Fund, LP; Jay B. Jensen; McCord
Christensen Holdings, LLC; McCord Christensen;
Susan Cowden Raybourn; J. Richard Rock; Michael
Smith; the D. Truitt and Lorna Davis Charitable Trust;
Lamar D. Matthews, as Trustee of the D. Truitt and
Lorna Davis Charitable Trust; the D. Truitt and Lorna
Davis Foundation; and Jack W. Young,

               Defendants.

---

## ORDER DISMISSING CASE

---

This matter comes before the Court on the motion to Defendants Lancer Financial Services, LLC; Lancer Partners Ltd.; Lancer Partners GP, LLC; Fargo Petroleum, LLC (f/k/a Davison Petroleum Products, LLC); Falcon Partners, Ltd.; Haven Retirement Fund, LP; Jay B. Jensen; the D. Truitt and Lorna Davis Charitable Trust; Lamar D. Mathews, as Trustee of the D. Truitt and Lorna Davis Charitable Trust; the D. Truitt and Lorna Davis Foundation; and Jack W. Young (collectively, "Defendants") for dismissal of the Amended Complaint against them under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Appearances, if any, were noted in the record.  Based on all the files, records and pleadings herein:

It is hereby ORDERED that:

1.      Defendants' Motion to Dismiss the Trustee's Amended Complaint is GRANTED; and,

2.      The Trustee's Amended Complaint is dismissed with prejudice in its entirety as to Defendants.

Entered on this _____ day of _____, 2011.

_____
GREGORY F. KISHEL
UNITED STATES BANKRUPTCY JUDGE

fb.us.6495911.01